# Commonwealth ex rel. *v.* Connor, Appellant.

*Public officers—Collector of delinquent taxes—Removal—Acts of May 1, 1861, sec. 23, P. L. 450, and June 8, 1891, P. L. 212.*

Under the Acts of May 1, 1861, sec. 23, P. L. 450 and June 8, 1891, P. L. 212, a collector of delinquent taxes in the county of Allegheny who has been appointed by the county treasurer, may be removed from his office by the county treasurer's successor.

When by the Act of June 8, 1891, P. L. 212, the treasurer was relieved from the absolute liability for the whole amount of the tax duplicate, and the taxes if previously charged were credited back to him, and charged to the collector who was required to give bond to the county, the collector ceased to be the personal agent of the treasurer to perform a duty solely incumbent on the latter, and became the agent or officer of the county to whom the money was due, and to whom he was directly to account. The underlying intent common both to the act of May 1, 1861, and June 8, 1891, is that the officer responsible for the money shall have the appointment and control of the agent of collection.

However direct and absolute the charge of the amount of the tax duplicate to the collector under the statute, his responsibility attaches by reason of his occupancy of the office of collector, and will cease when that passes to his successor. His liability to account will not extend to any-

thing not arising from his administration of the office while he occupied it.

Argued Oct. 30, 1903.    Appeal, No. 107, Oct. T., 1903, by defendant, from judgment of ouster of C. P. No. 2, Allegheny Co., April T., 1903, No. 836, on quo warranto, in case of Commonwealth ex rel. Robert G. Mattern v. Samuel P. Connor. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Quo warranto to determine the title of respondent to the office of collector of delinquent taxes.

SHAFER, J., filed the following opinion :

This case comes before us on a demurrer to the answer of the defendant to a suggestion for a quo warranto, and from the pleadings it appears that the defendant became collector of the delinquent county taxes on August 31, 1902, under the provisions of the acts of assembly hereinafter mentioned ; a warrant having been then issued to him by the then county treasurer, authorizing him to collect the delinquent county taxes of the years, 1900, 1901 and 1902.

It further appears that on March 2, 1903, the successor in office of the county treasurer, from whom the respondent received his warrant, by writings, copies of which are attached to the suggestion, undertook to remove the respondent from his office, and to appoint the relator in his stead.

The appointment or designation of collector of delinquent taxes in the county of Allegheny is regulated by the 23d section of the Act of May 1, 1861, P. L. 450, which is a special act for that county, as modified by the Act of June 8, 1891, P. L. 212.    The first mentioned act provides for the issue at a certain time, by the county treasurer, of a warrant to any citizen of the county to collect the delinquent taxes, with five per cent additional, which five per cent is to be in full compensation for the services and expenses of the collector ; and further provides that the collectors so appointed by the treasurer shall be responsible to him " for the faithful performance of the duties, and for the amounts collected by them, and shall have all the powers conferred on collectors of taxes by the 21st section of the act of April 15, 1834."    This last mentioned sec-

tion provides that if any person shall neglect or refuse to pay taxes due by him within thirty days, it shall be the duty of the collector to levy the amount by distress, and in case sufficient goods and chattels cannot be found, to take the body of the delinquent and convey him to the county jail.

The act of 1891 changes the existing law so as to relieve the treasurer from liability for the delinquent taxes, and to charge the same to the collector, and directs a bond to be given by the collector to the county in such amount as the county commissioners shall designate, and that the collector shall make monthly returns to the commissioners and monthly payments to the treasurer.

The only question in this case is whether the respondent is an " appointed officer " within the meaning of article 6, section 4, of the constitution, and so removable at the pleasure of the power by which he was appointed.

That the respondent is an officer, that is a public officer, we think there can be no doubt. The constitution provides, so far as we can discover, but two methods of acquiring public office, election and appointment. It certainly cannot be said that the respondent was elected to his office, and he must therefore be said, in some sense, at least, to have been appointed, and the act of 1861, in fact, speaks of him as the collector, appointed by the treasurer.

The defendant, however, contends that he stands in a contractual relation to the county of Allegheny, because, as he contends, he has become personally bound to the county for the amount of the warrants placed in his hands, and must, unless exonerated by the commissioners, pay the whole amount thereof to the couuty, whether collected by him or not, and this in consideration of the commission of five per cent provided for in the act. We consider it not entirely clear that the respondent is liable for the whole amount of the taxes at all events unless exonerated as a collector appointed under the act of 1834 would be. The 21st section of the act of 1834 is expressly referred to in the act of 1861, from which it may be inferred that the other provisions of that act with regard to the duties and responsibilities of tax collectors are not applicable to the collectors appointed by the county treasurer under the act of 1861, they being accountable to him only, and he being

liable for the whole duplicate. It may be that the direction of the act of 1891 that the amount of the delinquent taxes, if previously charged to the treasurer shall be credited to him and charged to the collector, is sufficient to charge the collector in the same manner in which the treasurer is charged under the act of 1861; but the manner of providing for a bond, and for monthly returns to the county commissioners and monthly payments to the county treasurer would not seem to indicate that the direction to charge the collector was intended to have that effect, and to make him absolutely liable for taxes, whether collected by him or not. It does not seem to be necessary, however, to decide whether the liability of the respondent is such as he states it to be or not. No case has been cited by respondent's counsel which even tends to show that the placing of a warrant in the hands of the collector, under these circumstances, creates a contractual relation between the collector and the county, or makes the relation of the collector to the public different from that of all other public officers.

It is further contended by the respondent that the relator, Mattern, has no standing to question his right because, he says, no warrant has been issued to the relator under the act of 1861, by the present treasurer, and, therefore, he is not empowered to collect the taxes, and consequently has no standing to question respondent's right. The answer alleges that David F. Collingwood, the present treasurer, did not issue to the relator his warrant, together with the schedules of the unpaid taxes for the years 1900, 1901 and 1902, or any of them. It is not denied, however, that the written appointment of the relator, on which he relies, a copy of which is attached to the suggestion, authorizes and requires him to demand and receive from the persons named in the schedules in the possession of the respondent, the taxes charged against them. The appointment of the relator is, therefore, in fact, a warrant; it is not accompanied with a schedule in the sense of being physically connected with it, but it refers to the schedule already made, and if the treasurer has the power to remove Connor, it will be Connor's duty to deliver up the schedules in his hands to his successors, and the warrant will then be accompanied by a schedule as the act requires. In other words to say that the relator has no standing because

he has not received the schedule, which on his theory of the law he ought to have received, and that therefore the respondent cannot be required to deliver up the same to him is to reason in a circle.

The respondent also claims that the provisions of the constitution should not apply in this case, because the present treasurer has not, and never had, and never can have any responsibility for the collection of the taxes for which warrants are now in his hands. The direction of the constitution, however, is positive and makes no such distinction. We do not understand it to be claimed that the respondent is a petty officer or subordinate ministerial agent or employee, such as was held in the case of the Commonwealth v. Black, 201 Pa. 433, not to be within the meaning of the provision of the constitution.

As to the effect of the act of 1891 we are provided with a choice of views by the several counsel representing the respondent, one of whom treats the act of 1891 as applicable to the case, and the other argues that it is not applicable. The argument of the latter is that the act of 1891 above mentioned is unconstitutional, for the reason that the subject matter of it is not sufficiently expressed in the title ; and further that the act of 1861, above mentioned, is a special act relating to the county of Allegheny only, and the act of 1891 is a general act with no repealing clause, and therefore the act of 1861 is not repealed by it, and the whole of its provisions are still in force in this county. As to the question of the title of the act, which is " An act relating to the collection of state, county and poor taxes in the several counties of this commonwealth, and providing for monthly payments and returns of the collectors thereof," we think it gives sufficient notice of all the contents of the act. The office of treasurer is so intimately connected with the collection of taxes that it does not appear to be necessary that the treasurer should be mentioned in the title of an act which professes to relate generally to the collection of taxes. As to the repeal of any part of the act of 1861, the act of 1891 is not merely a general act on the same subject, but expressly provides what where taxes are placed in the hands of a collector in accordance with any existing law of this commonwealth, certain things shall be done. This would seem to

refer to special laws as well as general ones. We are of opinion, therefore, that the act of 1891 is in force in the county of Allegheny.

Whatever may be the true solution of either of the questions so raised, it does not appear to us that the respondent is in a position to raise them in this case. His answer alleges that in pursuance of the act of 1891 he filed his bond with the commissioners, and that thereby the treasurer was relieved from the responsibility of the collection of the taxes. So long as this statement remains in his answer we do not see how he can be heard to allege that the act of 1891 is either unconstitutional, or not applicable to his case.

We are unable to see any real distinction between this case and that of Houseman v. Commonwealth, 100 Pa. 222. The commonwealth is therefore entitled to judgment of ouster upon the demurrer, with costs.

*Error assigned* was in entering judgment of ouster.

*R. B. Petty* and *John P. Hunter*, with them *S. Schoyer, Jr.*, for appellant.—Under the 23d section of the act of May 1, 1861, the collectors appointed were the mere agents of the treasurer, with the powers and authority of tax collectors. The treasurer and his sureties were liable to the county for the whole amount of the tax levy.

The act of June 8, 1891, simply relieves the treasurer from his personal liability and substitutes the personal liability of the collector, upon the bond of the latter being approved by the commissioners.

Upon Connor giving bonds to the county he and his sureties in such bonds became liable for the taxes covered by the several bonds, and continued to be liable for the same until paid or exonerated according to law.

The relation of Connor to the county is a contract relation.

Collingwood, the succeeding treasurer, has no duty or responsibility concerning the collection of the taxes for preceding years, and the act of 1861 gives him no authority to appoint a collector for such taxes.

*W. B. Rodgers*, with him *George H. Calvert*, for appellee.

PER CURIAM, November 11, 1903 :

Under the act of 1861 the county treasurer was charged absolutely with the whole amount of the tax duplicate, from which he could only be exonerated to the extent and in the manner provided in the act. There was much reason, therefore, in the view that when he appointed a collector of delinquent taxes he was appointing a personal agent to perform a duty for which he was himself in all events personally liable. But when by the act of 1891 the treasurer was relieved from this absolute liability and the taxes, if previously charged, were credited back to him, and charged to the collector who was required to give bond to the county, the collector ceased to be the personal agent of the treasurer to perform a duty solely incumbent on the latter, and became the agent or officer of the county, to whom the money was due and to whom he was directly to account. The underlying intent common to both statutes is that the officer responsible for the money shall have the appointment and control of the agent of collection.

It is true that under the act of 1891 the collectors are to be " appointed or elected in the manner now provided by law in each county," and therefore the respondent was properly appointed under the act of 1861 by the treasurer in office at the time. But the treasurer could no longer be considered as in the position of an individual appointing a personal agent. He was clearly acting virtute officii in the appointment of a subordinate county officer, and under the constitution the power of removal passed to his successor with the succession to his office.

The appellant is in no danger of the hardship that his argument appears to anticipate. However direct and absolute the charge of the amount of the tax duplicate to him under the statute, his responsibility attaches by reason of his occupancy of the office of collector, and will cease when that passes to his successor. His liability to account will not extend to anything not arising from his administration of the office while he occupied it.

Judgment affirmed.